IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BURNACE R. McDONALD, JR., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-00062 |
| ) | Judge Crenshaw / Frensley |
| HICKMAN COUNTY JAIL, et al., ) | |
| ) | |
|     Defendants. ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon Defendants' "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." Docket No. 10. Along with their Motion, Defendants have contemporaneously filed a "Brief in Support" of their Motion (Docket No. 11), a "Concise Statement of Undisputed Facts" (Docket No. 10-1), and the Declarations of Captain Barry McNabb (Docket No. 10-2) and Lorie Fuller Davis (Docket No. 10-3). Because the undersigned will consider Defendants' submitted materials, the undersigned will construe Defendants' Motion as a Motion for Summary Judgment.

Plaintiff has not responded to either the instant Motion or to the Concise Statement of Undisputed Material Facts, nor has Plaintiff filed his own Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that Defendants violated his Eighth Amendment rights by refusing to give him his mental health medications and by charging him for a blood test. Docket No. 1. Specifically,

Plaintiff avers that Defendant Fuller ordered a blood test for him, the results of which she reported showed that Plaintiff did not need mental health medication, so she refused to give it to him. *Id.* Plaintiff argues that he is a veteran who is on full disability due to depression, anxiety, and PTSD, and that doctors have ordered that he receive mental health medication. *Id.* Plaintiff sues Defendant Fuller solely in her official capacity as Nurse of the Hickman County Jail. *Id.* Plaintiff argues that Defendant Fuller "was incompetent [and] has since been fired by the Jail." *Id.* Plaintiff seeks "proper medical care," reimbursement for the costs of the blood test that he was required to pay, and at least $150,000 for pain and suffering (with the actual "amount to be determined" to "exceed 150K"). *Id.*

Plaintiff originally sued Southern Health Partners, Nurse Fuller, and the Hickman County Jail. *See* Docket No. 1. Judge Crenshaw, when conducting his initial frivolity review dismissed Plaintiff's claims against the Hickman County Jail, and the Jail was terminated as a Defendant in this action. Docket Nos. 7, 8. Accordingly, the only remaining Defendants in this action are Southern Health Partners and Nurse Fuller. In his Memorandum and Order, Judge Crenshaw further held that Plaintiff could not pursue any claims against Southern Health Partners or Nurse Fuller that occurred on or before July 6, 2016, as those claims would fall outside the applicable statute of limitations period. *Id.* Thus, the Court will consider only Plaintiff's claims that allegedly occurred after July 6, 2016. Finally, Judge Crenshaw additionally denied Plaintiff's request for injunctive relief as moot, since he is no longer incarcerated. *Id.* Therefore, the only relief requested that is presently before the Court is reimbursement to Plaintiff of the cost of his blood test and monetary relief for pain and suffering.

Defendants filed the instant Motion and supporting materials arguing: (1) Plaintiff's

2

claim against Defendant Fuller is time-barred by the applicable statute of limitations; (2) Plaintiff has failed to identify an official Southern Health Partners policy or custom that caused him constitutional injury, and therefore cannot maintain his claim against it as there is no respondeat superior liability under §1983; and (3) Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. Docket Nos. 10, 11.

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 10) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

## II. Undisputed Facts[1]

### A. Declaration of Captain Barry McNabb

Captain Barry McNabb is the Jail Administrator of the Hickman County Jail. Docket No. 10-2 ("McNabb Dec."), ¶ 1. As the Jail Administrator, Captain McNabb carries out the policies and procedures for the Hickman County Jail that have been established by Sheriff Randal Ward. *Id.*, ¶ 2. Sheriff Ward has delegated the day-to-day duties of operations of the Hickman County Jail to Captain McNabb. *Id.*

Plaintiff was booked into the Hickman County Jail most recently on September 14, 2015, and was released on June 30, 2017. *Id.*, ¶ 4.

The Hickman County Jail has a grievance policy for inmates to express complaints with the conditions of their confinement. *Id.*, ¶ 5. Inmates with a grievance may submit a grievance electronically on a kiosk machine, which is located in each housing pod. *Id.* The grievance must

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

3

be submitted within seven (7) days of the occurrence. *Id.* The grievances are reviewed by a grievance officer/board and a response is sent to the inmate no later than fifteen (15) days of receipt of the grievance. *Id.* If an inmate is dissatisfied with the response, they may appeal to the Jail Administrator within seven (7) days of the decision. *Id.* The Jail Administrator has fifteen (15) days to respond to the appeal. *Id.* Once the Jail Administrator makes a determination as to a resolution of the Plaintiff's appeal, he/she notifies the inmate of his/her decision. *Id.*

Plaintiff submitted no grievances and no appeals of grievances through the Jail kiosk system between the dates of July 6, 2016 and June 30, 2017. *Id.*, ¶ 7.

**B. Declaration of Lorie Fuller Davis**

Lorie Fuller Davis was employed by Southern Health Partners as a nurse at the Hickman County Jail until December 9, 2015. Docket No. 10-3 ("Fuller Davis Dec."), ¶ 1. Lorie Fuller Davis has not worked at the Hickman County Jail or provided medical care to Plaintiff at any time since December 5, 2015. *Id.*, ¶ 3.

### III. Law and Analysis

**A. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on November 3, 2017. Docket No. 10. Plaintiff has

4

failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Concise Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion

>for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no

genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

### 1. Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is

7

clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Eighth Amendment

#### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

#### b. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429

U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an

9

inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

Defendant Fuller was employed by Southern Health Partners as the Nurse at the Hickman County Jail until December 5, 2015. Docket No. 10-3. With regard to the official capacity claims against her, Defendant Fuller stands in the shoes of her employer, Southern Health Partners, Inc., a private entity that contracts with the State to provide medical care to the inmates of the Hickman County Jail. A private entity that contracts with the State to perform a traditional state function, such as providing medical care to inmates, acts under color of state law

10

and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, Southern Health Partners, Inc., is amenable to suit under § 1983.

Section 1983, however, does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for Southern Health Partners to be held liable, therefore, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

## D.  Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a)  **Applicability of Administrative Remedies**.  No action shall be brought with  respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of

12

confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

. . .

For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

**E.  The Case at Bar**

As an initial matter, the undisputed facts establish that Plaintiff has not filed grievances in this matter, much less appealed any grievances to completion of the Jail grievance procedure; accordingly, Plaintiff has not exhausted his administrative remedies, as required by the PLRA.  For this reason alone, Defendants' Motion for Summary Judgment should be granted, and this action should be dismissed.

Additionally, as discussed above, Plaintiff sues Defendant Fuller only in her official capacity as the Nurse at the Hickman County Jail.  It is undisputed that Defendant Fuller ceased to be employed by Southern Health Partners as a Nurse at the Hickman County Jail on December 5, 2015, and that Judge Crenshaw ruled that all claims arising prior to July 7, 2016 were time-barred.  Accordingly, any claims Plaintiff may have had against Defendant Fuller are time-barred and Plaintiff's claims against her should be dismissed.

With regard to Plaintiff's claims against Defendant Southern Health Partners, Plaintiff does not even identify any official Southern Health Partners policy, practice, or custom, much less contend that any official Southern Health Partners policy, practice, or custom caused the alleged deprivation of his rights.  Because Plaintiff does not allege, much less establish, that the alleged violations of his rights were caused by an official Southern Health Partners policy, practice, or custom, he cannot sustain his official capacity claims, and those claims should be dismissed.

## IV.  Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for

Summary Judgment (Docket No. 10) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge